#24551-rev&rem-ROEHR, Circuit Judge
**2008 SD 42**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

EDITH G. HARMON and
JOSEPH HARMON,                                  Plaintiffs and Appellants,

        v.

ANITA M. WASHBURN,                              Defendant and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT
OF THE SIXTH JUDICIAL CIRCUIT
HAAKON COUNTY, SOUTH DAKOTA

* * * *

HONORABLE JAMES W. ANDERSON
Judge

* * * *

DYLAN A. WILDE
THOMAS E. BRADY of
Brady Pluimer, PC
Spearfish, South Dakota

COURTNEY R. CLAYBORNE of
Clayborne, Loos, Strommen &
  Sabers, LLP                                   Attorneys for plaintiffs
Rapid City, South Dakota                        and appellants.

ROBERT B. ANDERSON of
May, Adam, Gerdes & Thompson, LLP               Attorneys for defendant
Pierre, South Dakota                            and appellee.

* * * *

CONSIDERED ON BRIEFS
JANUARY 7, 2008

OPINION FILED 6/4/08

#24551

ROEHR, Circuit Judge

[¶1.]        Edith G. Harmon (Edith) and Joseph Harmon (Joseph) (collectively Harmons) brought a negligence action for personal injuries against Anita M. Washburn (Washburn).  The trial court denied Harmons' motion for judgment as a matter of law on the issue of Washburn's negligence and on the issue of Edith's contributory negligence.  The jury returned a general verdict denying Harmons' claim.[1]  The trial court then denied Harmons' renewed motion for judgment as a matter of law and, alternatively, for a new trial.  Harmons appeal the denial of their motions.  We reverse and remand.

FACTS

[¶2.]        On December 23, 2001, Washburn was driving the lead vehicle in a caravan of approximately ten vehicles.  The caravan traveled south on Highway 34 at approximately ten miles per hour, as it approached a bridge over the Cheyenne River.  A line of horseback riders was off to the left of the highway, traveling south, and parallel to the highway.  The caravan was traveling in support of the horseback riders.  The vehicles in the caravan were separated from each other by a distance of approximately one vehicle length.

[¶3.]        Edith and her husband, Joseph, were driving separate vehicles south on Highway 34.  Joseph was following Edith.  Edith saw the caravan from a distance and slowed as she approached it.  She noticed the horseback riders to the left of the highway.  Edith followed the caravan for a time, then started to pass just

---

1.    Washburn counterclaimed against Edith, alleging negligence and personal injuries.  The jury returned a general verdict denying Washburn's claim.  Washburn has not appealed that verdict.

before coming to the bridge. Prior to passing, Edith checked for oncoming traffic, checked her mirrors, and used her turn signal to signal her pass. Edith's vehicle was equipped with daytime running lights. The evidence is disputed as to whether or not the drivers in the caravan had activated their emergency flashers. Edith drove thirty to thirty-five miles per hour as she passed the caravan. She was about to overtake the Washburn vehicle as it was nearing the south end of the bridge.

[¶4.]        As she neared the south end of the bridge, Washburn wanted to turn off the highway to wait for and meet the horseback riders. Washburn considered turning right off the highway, but decided to turn left onto an approach. The approach was lower than the level of the highway and was not visible from a distance. The vehicles driven by Washburn and Edith collided as Washburn was making the left turn. The evidence is disputed as to whether or not Washburn signaled her left turn. The entire incident took place in a legal passing zone with a sixty-five mile per hour speed limit. Visibility was good and there was no oncoming traffic.

[¶5.]        After the accident, Joseph transported Edith to an emergency room at a Pierre hospital, where she was examined and had glass removed from an abrasion on her arm. Thereafter, Edith was treated for other alleged injuries.

[¶6.]        Harmons filed a negligence action for personal injuries against Washburn. The action was tried to a jury over two days. Washburn denied her negligence, asserted Edith's contributory negligence, and contested the nature and extent of Harmons' injuries. After all the evidence had been presented, Harmons moved for judgment as a matter of law on the issue of Washburn's negligence and

on the issue of Edith's contributory negligence.  The trial court denied the motion.

The jury returned a general verdict for Washburn.  Harmons then renewed their

motion for judgment as a matter of law and, alternatively, for a new trial.  The trial

court also denied this motion.  Harmons appeal.

## ISSUES

[¶7.]        Harmons raise the following issues on appeal:

> Whether the trial court abused its discretion when it
> denied Harmons' motion for judgment as a matter of law.

> Whether the trial court abused its discretion when it
> denied Harmons' renewed motion for judgment as a
> matter of law and, alternatively, for a new trial.

## STANDARD OF REVIEW

[¶8.]        A trial court's ruling on a motion for directed verdict is reviewed under

the abuse of discretion standard.  Christenson v. Bergeson, 2004 SD 113, ¶ 10, 688

NW2d 421, 425 (citing Gilkyson v. Wheelchair Express Inc., 1998 SD 45, ¶ 7, 579

NW2d 1, 3 (additional citations omitted)).  "An abuse of discretion occurs when 'no

judicial mind, in view of the law and the circumstances of the particular case, could

reasonably have reached such a conclusion.'"  *Id.* (quoting Bridge v. Karl's Inc., 538

NW2d 521, 523 (SD 1995) (citations omitted).  This Court's task on appeal, "is to

review the record and ascertain whether there is any substantial evidence to allow

reasonable minds to differ."  *Id.* ¶ 11 (citations omitted).  "If sufficient evidence

exists so that reasonable minds could differ, a directed verdict is not appropriate."

*Id.* ¶ 22 (citation omitted).

[¶9.]        Likewise, the trial court's ruling on a motion for judgment

notwithstanding the verdict is reviewed under the abuse of discretion standard.  *Id.*

¶ 12 (citing Welch v. Haase, 2003 SD 141, ¶ 19, 672 NW2d 689, 696 (citation omitted)).  The testimony and evidence are reviewed "in a light most favorable to the verdict or to the nonmoving party." *Id.* (quoting Sabag v. Continental South Dakota, 374 NW2d 349, 355 (SD 1985) (citing Ziebarth v. Schnieders, 342 NW2d 234, 236 (SD 1984))).  "[W]ithout weighing the evidence [this Court] must decide if there is evidence which would have supported or did support a verdict." *Id.* (quoting *Sabag*, 374 NW2d at 355 (citing Corey v. Kocer, 86 SD 221, 226-27, 193 NW2d 589, 593 (1972))).

[¶10.]        In 2006 SDCL 15-6-50(a) and (b) were amended.  The substantial changes made by this amendment include referring to a motion for directed verdict as a motion for judgment as a matter of law and denominating a motion for judgment notwithstanding the verdict as a renewed motion for judgment as a matter of law.  These amendments, however, do not change our standard of review – which remains abuse of discretion.  The abuse of discretion standard is also utilized "when reviewing a trial court's denial of a motion for a new trial." *Christenson,* 2004 SD 113, ¶ 13, 688 NW2d at 426 (citing Olson v. Judd, 534 NW2d 850, 852 (SD 1995) (citing Treib v. Kern, 513 NW2d 908, 911 (SD 1994))).

## DECISION

### ISSUE ONE

[¶11.]        **Whether the trial court abused its discretion when it denied Harmons' motion for judgment as a matter of law.**

[¶12.]        At the close of the evidence Harmons moved for a judgment as a matter of law on the issue of Washburn's negligence and on the issue of Edith's contributory negligence.  SDCL 15-6-50(a)(1) provides:

> If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

"Only in exceptional cases may the verdict be directed in favor of the party having the burden of proof." *Christenson*, 2004 SD 113, ¶ 24, 688 NW2d at 428.

> "[W]hen the evidence on behalf of the moving party is clear and full, credible and not contradicted, and is so plain and complete that reasonable minds could come to no other conclusion[,]" a motion for directed verdict may be granted. *Id.* (quoting Langdon v. Reuppel, 81 SD 289, 291, 134 NW2d 293, 294 (1965). But if, when viewed in a light most favorable to the nonmoving party, there is any substantial evidence to sustain the cause of action or defense, it must be submitted to the finder of fact. SDCL 15-6-50(a). Denke v. Mamola, 437 NW2d 205, 207 (SD 1989).

*Id.*

[¶13.]        Harmons argue that Washburn's driving that day violated at least five different South Dakota statutes and that each such violation "constitutes negligence *per se*." Alley v. Siepman, 214 NW2d 7, 9 (SD 1974). Concerning the first alleged violation, SDCL 32-26-18.1 provides in pertinent part:

> No person may turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway as required by §§ 32-26-17 and 32-26-18. A signal of intention to turn right or left when required shall be given continuously during not less than the last one hundred feet traveled by the vehicle before turning. . . .

The evidence on this point consisted of the testimony of Harmons, Washburn, and Washburn's daughter, Amanda Washburn. Both Harmons testified that

Washburn did not use her turn signal. Viewing the evidence in the light most favorable to Washburn, Washburn's daughter testified that her mother signaled the left turn fifteen feet before turning; Washburn testified, in effect, that she signaled the turn at most forty-four feet prior to the turn.[2]

[¶14.] Based on the testimony it is undisputed that Washburn violated the statute and was negligent per se. Therefore, we do not address Harmons' argument regarding the other five statutes violated. It was error for the trial court not to grant a judgment as a matter of law on the issue of Washburn's negligence.

[¶15.] Harmons also sought a judgment as a matter of law that Edith was not contributorily negligent.

> Contributory negligence is a 'breach of duty which the law imposes upon persons to protect themselves from injury, and which, concurring and cooperating with actionable negligence for which defendant is responsible, contributes to the injury complained of as a proximate cause.' (quoting Boomsma v. Dakota, Minnesota, & Eastern Railroad Corp., 2002 SD 106, ¶ 34, 651 NW2d 238, 245-46 (additional citations omitted)). Where plaintiff's contributory negligence is more than slight compared to defendant's negligence, plaintiff is barred from recovery. SDCL 20-9-2. As long as there is competent evidence to support the theory of contributory negligence, it is proper for the issue to go to the jury. *Id.* (citing Parker v. Casa Del Rey, 2002 SD 29, ¶ 5, 641 NW2d 112, 115).

Johnson v. Armfield, 2003 SD 134, ¶ 10, 672 NW2d 478, 481.

[¶16.] Edith looked in her mirror and signaled before passing. Her car was equipped with daytime running lights. The day was clear. There was no oncoming

---

2.  Washburn testified that she was driving ten miles per hour and signaled two or three seconds prior to the turn. The jury was provided with a mathematical formula to make the computation for distance.

traffic. She was in a legal passing zone and passed at thirty to thirty-five miles per hour in a sixty-five mile per hour zone. When Washburn made the left turn, Edith was unable to avoid the accident.

[¶17.] Washburn argues that Edith ought not to have passed on a bridge because the guardrails on the left would prevent her from leaving the highway in that direction to avoid an accident. This is tantamount to arguing that no one should ever pass on this bridge because of the guardrail on the left, which completely ignores the fact that it is a legal passing zone. Furthermore, "a motorist has the right to assume that other drivers will obey the rules of the road." *Treib*, 513 NW2d at 913 (citing Nelson v. McClard, 357 NW2d 517 (SD 1984)).

[¶18.] Washburn also argues that Edith was driving too fast. There is no evidence to support this assertion. All the evidence is that Edith was driving thirty to thirty-five miles per hour in a sixty-five mile per hour zone to pass Washburn's vehicle, which was traveling ten miles per hour.

[¶19.] Under these circumstances, passing a caravan, as opposed to one vehicle, is not evidence of contributory negligence. There was no oncoming traffic. Edith successfully passed all the cars in the caravan except the lead vehicle. Whether she was passing a fifty-car caravan or just one vehicle, the accident arose from the manner in which two vehicles were driven – Washburn's vehicle and Edith's vehicle.

[¶20.] Washburn implies that the caravan and the horseback riders to the left, and by then to the rear, should have caused Edith to reasonably anticipate Washburn's turn. Washburn offers no further explanation as to why Edith should

have anticipated the turn, much less one without a proper signal. Again, Edith had the right to assume Washburn would follow the rules of the road. *Id.*

[¶21.] There was no legally sufficient evidentiary basis for a reasonable jury to find Edith contributorily negligent. The trial court erred by not granting the judgment as a matter of law on this issue.

## ISSUE TWO

[¶22.] **Whether the trial court abused its discretion when it denied Harmons' renewed motion for judgment as a matter of law and, alternatively, for a new trial.**

[¶23.] After the jury returned its general verdict in favor of Washburn, Harmons renewed their motion for judgment as a matter of law. SDCL 15-6-50(b) provides in pertinent part:

> If, for any reason, the court does not grant a motion for judgment as a matter of law made at the close of all the evidence, the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. The movant may renew its request for judgment as a matter of law by filing a motion no later than ten days after notice of entry of judgment—and may alternatively request a new trial. . . .

[¶24.] Our standard of review is abuse of discretion. *Christenson*, 2004 SD 113, ¶ 12, 688 NW2d at 425. In reviewing the renewed motion for judgment as a matter of law, we, again, "review the testimony and evidence in a light most favorable to the verdict or to the nonmoving party." *Id.* We must determine, without weighing the evidence, whether there is evidence which would or did support the jury's verdict. *Id.*

[¶25.] As previously discussed, Washburn was negligent as a matter of law and Edith was not contributorily negligent as a matter of law. However,

-8-

we must also review the testimony and evidence regarding Harmons' damages. The jury's general verdict in favor of Washburn would be supported by the evidence if the jury was able to find that Harmons had not incurred damages as a proximate result of the accident.

[¶26.] Edith's primary claim of damages was an injury to her lower back. Considerable evidence was presented to the jury regarding the nature and extent of the injury and the need for treatment. Washburn strongly disputed this evidence. However, Edith's damage claim also included the cost of an examination and the removal of glass from an abrasion on her arm at a Pierre hospital emergency room immediately after the accident. This evidence is undisputed. Consequently, Harmons suffered damages as a proximate result of the accident.

[¶27.] The evidence does not support the jury's verdict. The trial court abused its discretion in not granting the renewed motion for judgment as a matter of law on liability and granting a new trial on damages.

[¶28.] We reverse and remand.

[¶29.] KONENKAMP and MEIERHENRY, Justices, concur.

[¶30.] GILBERTSON, Chief Justice, and PORTRA, Circuit Judge, dissent.

[¶31.] ROEHR, Circuit Judge, for SABERS, Justice, disqualified.

[¶32.] PORTRA, Circuit Judge for ZINTER, Justice, disqualified.

#24551

PORTRA, Circuit Judge (dissenting)

[¶33.]     I respectfully dissent. The majority substitutes its judgment for that of

the trial court and the jury, and in the process, undermines the validity of the jury

system.

[¶34.]     The majority acknowledges that the proper standard of review is

whether the trial court abused its discretion. This Court previously explained that

standard as follows:

> Our standard of review of the circuit court's denial of a
> directed verdict and of the jury's determination in favor of
> [the defendant] is well established. We must examine the
> evidence in the light most favorable to the non-moving
> party and give him the benefit of all reasonable
> inferences. Robinson v. Mudlin, 273 NW2d 753, 755 (SD
> 1979). The moving party is entitled to evidentiary
> consideration only where its evidence is uncontradicted or
> tends to amplify, clarify or explain the evidence in support
> of the verdict of the jury for the prevailing party. Nugent
> v. Quam, 82 SD 583, 152 NW2d 371, 374 (1967).
>
> In such a context, it becomes our task to review the record
> and determine whether there is any substantial evidence
> to allow reasonable minds to differ. Haggar v. Olfert, 387
> NW2d 45 (SD 1985). This Court does not weigh the
> evidence and substitute its judgment for that of the jury.
> *Robinson*, 273 NW2d at 755; Berg v. Sukup Mfg., 355
> NW2d 833, 835 (SD 1984). The decision of the jury is
> likely to be upheld as questions of negligence . . . are for
> the determination of the jury 'in all except the rarest of
> instances.' Stoltz v. Stonecypher, 336 NW2d 654, 657 (SD
> 1983).
>
> Whether the jury's verdict should result in a new trial
> being granted is left to the sound discretion of the trial
> court. We will not overturn that ruling without a clear
> showing of an abuse of discretion. Dartt v. Berghorst, 484
> NW2d 891, 894 (SD 1992) [95 SDO 579]. An abuse of
> discretion occurs only if no '"judicial mind, in view of the
> law and the circumstances of the particular case, could

-10-

> reasonably have reached such a conclusion.'" *Id.* (quoting
> Jensen v. Weyrens, 474 NW2d 261, 263 (SD 1991)).

Bridge v. Karls, Inc., 538 NW2d 521, 523 (SD 1995). This standard of review is the most deferential applied by this Court. Yet according to the majority, the experienced trial court and the twelve men and women of the jury selected by the parties apparently came to a conclusion, by unanimous decision, that no reasonable person could come to.

[¶35.] It is without question that Washburn was negligent. However, that is not the end of our inquiry. If the jury found that Harmon was contributorily negligent, more than slight, then she is precluded from recovery. Although the violation of a statute may be negligence per se, one does not have to violate a statute in order to be negligent.

> Negligence is the failure to use reasonable care. It is the doing of something which a reasonable person would not do, or the failure to do something which a reasonable person would do, under facts similar to those shown by the evidence. The law does not say how a reasonable person would act under facts similar to those shown by evidence. That is for you to decide.

Jury Instruction No. 5; SDPJI 10-01. This Court has previously endorsed the giving of this instruction. Kappenman v. Stroh, 2005 SD 96, ¶ 15, 704 NW2d 36, 41.

[¶36.] When the evidence produced at trial is examined, there are sufficient facts to support the jury's verdict. Harmon testified that she saw a line of approximately ten cars pulling onto the highway in front of her and some people riding horses moving in the same direction as the vehicles. She attempted to pass this line of cars as she entered onto the Cheyenne River Bridge. She acknowledged that she was not certain about what the vehicles were going to do, and she was

aware from her experience as a rancher that sometimes vehicles turn off the highway onto approaches that are difficult to see. Harmon also admitted that she did not do anything such as honking her horn or flashing her lights to warn the line of vehicles that she was passing.

[¶37.]       The majority also asserts that it is undisputed that Harmon was traveling between thirty to thirty-five miles per hour as she passed the caravan. However, the nature of the accident tends to bring that into question. Harmon's vehicle hit Washburn's vehicle with sufficient speed that Harmon's vehicle flipped over Washburn's vehicle. The jury was instructed that they "have a right to consider the common knowledge possessed by all of you, together with the ordinary experiences and observations in your daily affairs of life." Jury Instruction No. 28; SDPJI 1-04; Gross v. Connecticut Mutual Life Ins. Co., 361 NW2d 259, 269-70 (SD 1985).

[¶38.]        It seems highly unlikely that a vehicle traveling thirty-five miles per hour and striking another vehicle in a t-bone style accident would flip over the vehicle that was struck in the manner testified to by Harmon. It is quite possible that the jury rejected Harmon's testimony as to speed because the physical evidence of the accident was inconsistent with her version of the events, even without contradictory testimony.

[¶39.]       It is also possible that the jury did not believe Harmon's testimony regarding damages. Harmon denied having similar back problems prior to the accident; however, her testimony was contradicted by her medical records and the testimony of Dr. Nelson. The jury was instructed, "If you believe that any witness

testifying in this case has knowingly sworn falsely to any material matter in this case, then you may reject all of the testimony of the witness." Jury Instruction No. 26; SDPJI 2-04; State v. Rosales, 302 NW2d 804, 806 (SD 1981). If the jury found that Harmon was lying and rejected all of her testimony, then it is not surprising that they found for Washburn. It is impossible to determine whether that is what happened in this case, but that is precisely the problem with attempting to invade the jury room.

[¶40.]     It is prudent to compare the facts of this case with those in *Bridge*. In *Bridge,* the defendant admitted liability for any of the plaintiff's injuries proximately caused by an automobile accident. *Bridge*, 538 NW2d at 523. The jury returned a verdict for the defendant, and the plaintiff moved for judgment notwithstanding the verdict or a new trial. *Id.* This Court affirmed. *Id.* at 526. In doing so, the Court wrote:

> Factually this case is a close call. But the rules for new trials and judgments notwithstanding the verdict clearly apply to resolve close calls. *See* Olson v. Judd, 534 NW2d 850, 852 (SD 1995). If this jury's verdict can be explained with reference to the evidence, rather than by juror passion, prejudice or mistake of law, then this verdict must be affirmed. *Miller*, 520 NW2d at 272. Viewing the evidence in a light most favorable to the verdict, we cannot say the jury's award was a result of passion or prejudice or that the jury was palpably mistaken on the rules of law by which damages in this case are to be measured.

*Id.* at 525.

[¶41.]     This Court should follow that precedent in this case. As in *Bridge,* there has been no finding of passion, prejudice, or mistake of law. In fact, Harmon does not even argue that the jury was instructed improperly on the law. Simply

put, Harmon does not agree with the jury's decision. However, it does not matter if she agrees with the jury's decision, nor even if we agree with the jury's decision. It only matters whether the decision can be supported by a review of the evidence most favorable to the verdict, and as discussed above, it can.

[¶42.] This Court's previous decision in Treib v. Kern, 513 NW2d 908 (1994) is also particularly instructive. That case also involved a car accident and the accompanying issues of negligence and contributory negligence, and that jury also found for the defendant. *Id.* at 910. The plaintiff appealed the trial court's denial of his motions for directed verdict and judgment notwithstanding the verdict, and this Court affirmed. *Id.*

[¶43.] As in this case, the defendant in *Treib* violated a statute and was negligent per se. *Id.* at 913. Additionally, the plaintiff was not found to have violated a particular statute. However, the trial court found, and this Court agreed, that the plaintiff should have realized that he was within the zone of danger and either honked to alert the defendant of his presence or taken evasive action. *Id.* This Court went on to say:

> It is for the jury to decide whether [plaintiff] was guilty of contributory negligence for failure to use reasonable care in discovering the danger and avoiding a collision. Winburn v. Vander Vorst, 74 SD 531, 55 NW2d 609 (1952). A determination supported by evidence will not be disturbed even though there are facts which would warrant a different conclusion. Rumbolz v. Wipf, 82 SD 327, 145 NW2d 520 (1966).
>
> After viewing the evidence in a light most favorable to [defendant] and giving him the benefit of all reasonable inferences, we conclude that reasonable minds could differ as to [plaintiff's] contributory negligence. "[I]t is not the function of this court on review to weigh conflicting

-14-

> evidence or to pass upon credibility of witnesses; that task lies within the province of the jury." *Sharkey v. Washington Nat. Ins. Co.,* 373 NW2d 421, 427 (SD 1985) (citing Lukens v. Zavadil, 281 NW2d 78 (SD 1979); Kamp Dakota, Inc. v. Salem Lumber Co., Inc., 89 SD 696, 237 NW2d 180 (1975)). Therefore, the trial court did not abuse its discretion in denying the motions for directed verdict and judgment notwithstanding the verdict.

*Id.* (footnote omitted).

[¶44.]      Just as in *Treib,* Harmon failed to warn the vehicles that she was passing by honking her horn and/or flashing her lights. By attempting to pass ten cars on a bridge she also placed herself in a situation where she would not be able to take any evasive action in the event of an emergency, even though it was apparent that the ten cars were not traveling in a normal fashion and extra caution may be required. It was up to the jury to decide if Harmon's actions constituted negligence under the unique circumstances of this case, and if so, whether her negligence was more than slight in comparison to that of Washburn.

[¶45.]      In summary, there was sufficient evidence presented to create a question for the jury. It answered in favor of Washburn. We should not interfere with its verdict by directing a verdict for Harmon.

[¶46.]      GILBERTSON, Chief Justice, joins this dissent.